EVERETT, Judge.
This is an action by Dixie Electric Membership Corporation, which is a non-profit membership corporation, engaged in the business of transmitting and distributing electricity for power, lighting, heating and other appropriate uses throughout the State of Louisiana, including the Parish of East Baton Rouge, where the property involved in this proceeding is located.
The principal issues in contest concern the extent or width of the servitude required, the compensation for the taking of the servitude and the amount awarded for severance damages to the remainder, if any.
John P. Westbrook, Jr., Boyd West-brook, and the heirs and legatees of Lorena Westbrook Penton and Page West-brook are owners of two tracts of land which Dixie Electric Membership Corporation seeks to burden with a servitude or right-of-way over and across the two tracts by expropriation.
A supplemental and amending petition substituted the administratrix of the Succession of Mrs. Lorena Westbrook Penton and the heirs of Page Westbrook as parties defendants.
This expropriation proceeding seeks a servitude 100 feet in width across the defendants’ property for the construction of the electrical transmission line relating to a project involving a line to extend from Indian Mound in East Baton Rouge Parish to Livingston Parish. The defendants deny that a servitude 100 feet wide is needed and contend that any servitude expropriated should be limited to a width which would accommodate the transmission line and no more.
It is uncontested that Dixie Electric Membership Corporation is an electric cooperative entitled to exercise the power of eminent domain and the only contest is concerning the extent or width of the servitude required, the damages for the taking of the servitude and severance, if any.
The defendants also claim that they are entitled to damages for the taking of “granular materials’* consisting of clay and commercial sand which can be extracted for future sale.
We have carefully examined the record and find that the District Court was correct in concluding that the 100 foot width is reasonable and necessary for the construction of the electric transmission line. We are now concerned with the providence of the District Court in awarding severance damages as to the land taken. For the purpose of this examination, we shall discuss the tracts as comprising three distinct tracts or areas, which division was adopted by the District Court in its reason for judgment and which division the contesting parties have adhered to in their arguments.
“Tract A” contains 10.5 acres and has frontage on the west side on Denham Road which is asphalt and on the east side by Greenwell Springs Road which is also asphalt. The stream bed of Hubs Bayou meanders through “Tract A” in an irregular direction, running generally east to west.
“Tract B” contains 479 acres, having frontage on the east side of Greenwell Springs Road, and for purposes of discussion divided into “Tract B-l”, or about 150 acres of higher land fronting on Greenwell Springs Road, and “Tract B-2” lying below an arbitrary 54 foot elevation, fronting on the Amite River.
The District Court held that “Tract A” was suitable only for limited agricultural and pasturage purposes, although the defendants produced some testimony contending that it was a desirable single rural homesite. The District Court awarded $1,280.00 for the taking of the servitude and severance damages, without allocation.
*639 The District Court held that the highest and best use for “Tract B-l” was for residential purposes, this use being agreed upon by all experts, and awarded $5,124.00 for the taking of the servitude.
The District Court' held that no severance damages were due because of possible psychological fear of high voltage lines to future residents of the area but held that it was governed by the holding of other cases standing for the proposition that electrical transmission lines do cause severance damages to tracts where the highest and best use for that tract is rural, residential purposes, although there was no proof adduced to show that severance damages could be caused simply by the existence of the transmission lines.
Although the defendants asserted that 16.64 acres were damaged to the extent of 90%, since this would be the equivalent to the price of the whole servitude the District Court concluded that severance damages should be awarded to the extent of 10% over the entire remaining acreage.
The District Court further held that since a transmission line already traversed some of the property and therefore was already affected by the psychological fear, if any, of high voltage lines that the severance damages as to the whole of all of the property should be reduced by 10%.
We adopt the District Court’s formula in computing severance damages as to “Tract B-l”:
145.86 acres X $1,000.00 X 10% = $14,586.00
Less 10% thereof 1,458.00
Severance damages Total B-l $13,128.00
The District Court held as to “Tract B-2” that the defendants’ expert was correct and the value was fixed at $1,197.50, with no severance damage.
The District Court rejected all claims for the loss of possible future exploitation of sand and gravel deposits on some of the land, feeling that the early possibility of such exploitation was not probable and was too speculative to award damages.
In summary, the District Court granted $20,729.50 to the defendants for all property taken and for severance damages. The defendants have appealed, complaining that the severance damages awarded were too low and suggesting that 100 feet was not necessary for the installation of the electrical transmission line. Dixie Electric Membership Corporation has answered the appeal, alleging that the compensation awarded should be reduced to $9,725.00.
On “Tract B-2” the trial judge in oral reasons for judgment stated the following:
“On Tract B-2, the Court also accepts the finding of defendant’s expert that the value should be fixed at $1,197.50, with no severance damages.
The Court considered at some length defendant’s contentions that they should be paid on the basis of the possible exploitation of the sand and gravel deposits on some of the land. However, the Court is not convinced of the possibility of early exploitation or of the intrinsic value thereof. The computation urged by defendants herein are too speculative on both points to be the basis of an award herein.”
We agree with the District Court in this respect. Insofar as the granular materials are concerned, they remain there and can at some future date be reduced to possession and sold. The evidence indicates that it is not feasible to market this material because of the inaccessible road beds now available; however, it is entirely possible that accessible road beds will be available in the future.
In the case of Lafayette Airport Commission v. Roy, 265 So.2d 459 (La.App.1972), an award was granted for a deposit of sand under property expropriated for an airport runway. This case is distinguishable from the instant case as we sec *640 it because in the Lafayette Airport Commission case we are dealing with a huge concrete runway. In this case we are merely dealing with an electrical transmission line and it is conceivable that the deposit of sand and gravel can be taken without disturbing the servitude that is granted.
All costs to be paid by Dixie Electric Membership Corporation.
Affirmed.